No. ——

First Circuit

## KAUFMAN v. DEWITT

(June 7, 1927. Opinion and Decree.)
(June 28, 1927. Rehearing Refused.)

*(Syllabus by the Editor.)*

1. Louisiana Digest—Brokers—Par. 15, 23.
A real estate broker is not entitled to his commission where the property was sold to the mother of the party with whom he was negotiating, the evidence clearly showing that there was no conspiracy in this sale to defeat the broker's claim.

Appeal from the Parish of Calcasieu. Hon. Jerry Cline, Judge.

Action by Mrs. Wm. C. Kaufman against H. L. Dewitt.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Robert R. Stone, of Lake Charles, attorney for plaintiff, appellant.

E. F. Gayle, of Lake Charles, attorney for defendant, appellee.

LECHE, J. The present action is for the recovery of broker's commission. The defendant, Dewitt, does not deny that a commission was earned by someone on the sale of his property, and the main question in the case is whether that commission was earned by plaintiff or by Leon Chavanne, whom defendant attempted to make party to the suit. Dewitt's only interest is to obtain a discharge from the debt. He has already paid one hundred dollars to Chavanne and the balance of three hundred dollars, making in all four hundred dollars, the full amount in contestation, he has deposited or offered to deposit in court, subject to whatever judgment may be rendered herein. Of course, Dewitt is of the opinion that Chavanne is entitled to the commission, and that is demonstrated by the fact that he has already paid him one hundred dollars on account. Nevertheless Dewitt's testimony is entitled to great weight as he is the principal figure in the whole transaction.

Dewitt owned desirable residential property in the city of Lake Charles and wished to sell it. At least two brokers undertook to secure a purchaser for Dewitt's property, Mrs. Kaufman, plaintiff, and Leon Chavanne. Neither one of them, however, had any exclusive contract with Dewitt. On May 12, 1926, Mrs. Kaufman secured a written offer from G. Lock Paret, at a price agreeable to Dewitt, except that Paret's offer stipulated interest at seven per cent on the deferred payments and Dewitt wanted eight per cent, the offer to hold good until the night of May 13, the day following. Dewitt says that he accepted the offer with seven per cent with the understanding, however, that he was not to lose any discount on the notes. It seems that when G. L. Paret made this offer, he expected financial assistance from his family. He was disappointed in his anticipation, and it appears that both he and Mrs. Kaufman informed Dewitt that Paret was unable to comply with his offer. G. L. Paret then changed the terms and conditions of his first offer, made another proposition to purchase the property and his second offer was not acceptable to, nor was it accepted by Dewitt. These facts appear to be clearly borne out by the evidence, and would ordinarily be sufficient to defeat Mrs. Kaufman's claim for broker's commission. But it seems that the property was, ten days later, on May 22, 1926, sold by Dewitt to Mrs. M. P. Paret, mother of G. L. Paret, and at the time the present suit was filed it was occupied by G. L. Paret as his home, and from this circumstance, plaintiff, so believing, charges and alleges that, although the sale was apparently to Mrs. M. P. Paret, the deal was made with G. L. Paret, whose parents purchased the property for him, and that plaintiff's efforts were the procuring cause of the sale.

We do not believe that the evidence bears out these allegations of plaintiff. The property undoubtedly belongs to Mrs. M. P. Paret and this is conclusively shown by the act of sale offered in evidence. If she bought it for the benefit of her son, that is no concern of plaintiff and such fact could not be shown by parol, not even by creditors of G. L. Paret. The only question which plaintiff can inquire into as relevant to her demand is whether her efforts and actions were the procuring cause of the sale by Dewitt to Mrs. M. P. Paret. She had no dealings directly with Mrs. Paret, but she believes that it was her efforts to sell to G. L. Paret, the son, that induced Mrs. Paret, the mother, to purchase. Of course, these relations between the son and the mother were presumably most intimate, close and confidential, and the fact that the son lives on the property and pays no rent lends color to plaintiff's suspicions. The testimony, however, of Miss Zena Thompson, who acted on behalf of Leon Chavanne in the matter of selling the property, shows that negotiations were entered into by Miss Thompson with Mrs. M. P. Paret about the same time that Mrs. Kaufman was attempting to make a sale to Mr. G. Lock Paret. She further says that at first Mrs. M. P. Paret, after failing to keep an appointment with her to visit the property, informed her by phone that they, the Parets, were going to build their own home and that all deals were off. That a few days later another appointment was made to visit the house, and that being pleased with it, Mrs. M. P. Paret then decided to buy. The deal was finally consummated on May 22nd.

It thus appears that the actual purchaser, Mrs. M. P. Paret, was induced to enter into the contract of sale by Miss Thompson, who acted on behalf of Leon Chavanne, and that defendant, for the reason that the purchaser was brought to him by the Chavanne real estate agency, paid the latter agency one-fourth of the commission in cash.

We do not believe that plaintiff has shown her right to claim any commission from the defendant. To hold otherwise, we would have to be convinced that there was a conspiracy by the Paret family, by the defendant, and by the Chavanne agency to deprive her of the same, and the evidence negatives any such idea. Dewitt wanted to sell; it made no difference to him who negotiated the sale. Mrs. M. P. Paret bought and it can make no difference to her who gets the commission inasmuch as she does not have it to pay.

The District Court rejected plaintiff's demand and we think it did so properly.

The judgment on appeal is affirmed.